spirator in the attempt to defraud. (3.) For the reason last stated, they were properly regarded as a part of the res gestac, when title in La Crosse was set up by Blake, and the fraudulent sale and pretended purchase by Blake were relied on.

It was not objected, on the argument of this review, that the proceedings on the petition of the assignee were not regular and proper, or that the order or decree sought to be reviewed was not within the summary jurisdiction of the district court. Blake, the petitioner in review, appeared in the district court and answered the petition. He not only raised no objection to the form or substance of the proceeding, or the jurisdiction of the court therein, but, submitting to the jurisdiction, he invoked its exercise in his own behalf, by filing an answer, in the nature of a cross bill in equity, alleging his own title, and praying the court to adjust and settle the right to the said property, as between him and the assignee, to give to him the control thereof, and to restrain the assignee from interference therewith. Upon the issues of fact, the parties went to trial, and with the result above stated. This court is, therefore, not called upon to consider whether the determination of the question of title to this property should have been sought by a summary proceeding in the district court, or by a proceeding formally commenced by process. Jurisdiction of the subject-matter and question existed in the court, and both parties submitted themselves to its exercise, and, indeed, invoked it in the form and manner stated. Nor does the petitioner in review raise any objection, in this court, that there is any defect or error in the decree or order, founded on the mode of procedure in the district court. Besides, the court having found, as matter of fact, that the property was in the possession of the assignee, the court had power to protect that possession against interference except by resort to a proper legal proceeding to which the assignee should be a party; and, therefore, when Blake, the claimant, by his cross petition, invoked the controlling power of the court over the assignee, as its officer, and submitted to a trial of the questions which he asked the court to determine, no question arises here whether a more formal suit would or would not have been proper.

The judgment or decree must be affirmed, with costs.

## Case No. 2,803.

### In re CLARK.

[43 How. Pr. 70.]

District Court, S. D. New York. April 5, 1872.

BANKRUPTCY—ALLOWANCE FOR SERVICES OF BANKRUPT'S COUNSEL.

[Services of counsel, rendered bankrupt in resisting the petition filed against him, in examination before register, in preparing schedules, and in settling conflicting claims and rights between the bankrupt and the assignee, may be allowed out of the estate on the written approval of the assignee and certificate of the register.]

[In bankruptcy. Application of Mansfield Compton for compensation out of the fund in the hands of the assignee for services rendered the bankrupt as an attorney in resisting the petition filed against him, for services while the bankrupt was under examination before the register, for services in preparing schedules, and for other services in settling conflicting claims and rights between the bankrupt and the assignee.]

[On certificate of I. T. Williams, Register.]

I, the undersigned, register in charge of the above-entitled matter, do hereby certify and report that on the 27th day of October last a claim against the assignee of the said estate for professional services was filed with me by Mansfield Compton, Esq., amounting to the sum of $1,000, upon the back of which said claim was indorsed the words and figures following: "I the undersigned, object and disallow the foregoing claim, and require evidence to be produced to establish the same; and I apply to the register for an order for the examination of the claimant and his witnesses touching his claim. The said claim was presented to me this 27th day of October, 1871. John S. Beecher, Assignee of A. B. Clark, by C. W. Bangs, his attorney, pro hac vicae;" which said claim with said indorsements thereon are hereto annexed. That on the 6th day of November, aforesaid, I received a written request from the said Bangs, reciting that said Compton had presented the claim aforesaid to the said assignee, and that he had been served with a notice by said Compton that the examination of said claim would be proceeded with before the register on the 8th day of November, 1871, at 11 a. m., and that he was advised that John J. Monell and Richard H. Corbett are each of them necessary witnesses for the assignee on the hearing of said claim, and applying for a summons or order for the examination of said witnesses returnable on the 8th day of November, at 11 a. m., at the office of said register; and the assignee thereby raised the point "that it was the duty of the register upon said application to issue the summonses or order thereby applied for, and that, should the register decline to issue such summonses or order the register was requested to certify to the court the point so raised," which said notice is hereto annexed. That I did not issue such summons or order as so requested, not thinking it necessary to bring said Corbett or the said Monell down from his residence at Newburgh on that day, for the reasons hereinafter stated. That on the 8th day of November aforesaid, at 11 a. m., the said Compton appeared before me, and the said assignee also appeared by F. M. Bangs,

Esq., his counsel. That the said Bangs thereupon asked for an adjournment, alleging as a ground thereof "that certain creditors had filed a protest against any attorney's fees being allowed the assignee, and that the assignee had taken measures to call the creditors together, and had notified the protesting creditors, that they might, if they chose, employ attorneys and counsel to attend the trial of this claim, and that such protesting creditors did not appear, and that there was no proof that M. Compton had notified any of the creditors of his claim. That thereupon the assignee had not thought it expedient to employ counsel at his own expense, nor to pledge the estate to meet such expenses." Mr. Bangs further stated that he appeared only for the purpose of making that point. I overruled this application, stating as a reason therefor that "I should not pay any attention to such a protest save to execute the accounts of the counsel carefully, and allow them for all services properly rendered to the estate, the full going prices usually charged by competent counsel for similar services. That I did not think that a ground of adjournment, and, if the assignee did not take care of the estate by a proper defense, I should do my best to supply the omission." The said Bangs thereupon renewed his application for a postponement of said hearing, alleging as a ground therefor that "he had applied to the register for an order that the said Corbett and Monell appear as witnesses for the said assignee on this hearing, and that said application had not been granted." I denied this application also, stating as a reason therefor, "1. That the grounds alleged therefor were not consistent with those above alleged for such postponement. 2. That M. Compton had informed me that when he served the notice for this hearing upon Mr. Bangs he was informed by him that he should not dispute the amount of the bill, but only raise the point of law, and that M. Compton had also informed him that his testimony would probably occupy the whole of one sitting." To this Mr. Bangs urged that "the general orders required the register to sit six hours, and he denied that it would require six hours to take the testimony on the part of M. Compton." I then decided that, as Mr. Corbett had come in and was present, and could be examined by Mr. Bangs, if the time should permit, I would go on and take the testimony of the witnesses who were present as far as the same could be done at one session. Thereupon Mr. Bangs stated that he now appeared for Hardy, Blake & Co., and "demurred to the bill on its face;" but I decided, that I would take the testimony, and pass upon all these questions at the close of it. And thereupon Mr. Bangs proceeded to put his said objection in the nature of a demurrer to the bill of items of M. Compton's claim into writing, and,

having done so, handed me two papers, both of which are hereto annexed, asking me to certify the point so raised to the court. I decided that, "under the 11th general order the pendency of such an issue before the judge ought not to suspend or delay the proceedings in this case before the register. That it would not be a convenient practice to send the case up till the testimony was in, unless, indeed, it should be lengthy, in which case I might think it proper to send it up before;" and thereupon the said Bangs left. I therefore proceeded and took the testimony of the said Compton and the testimony of Balestier, which are hereto annexed. And I submit the two points above raised by the said Bangs, without comment.

And touching the said claim of the said Compton, I submit that I am unable to see, from the testimony, any privity of contract between the assignee and the claimant. The only ground upon which his claim can rest is, the provision of the act itself. The services claimed were, for resisting the petition filed against the bankrupt; for services while the bankrupt was under examination before register; for services in preparing schedules, and for other services in settling conflicting claims and rights between the bankrupt and the assignee. They are services that are rendered in almost every case of involuntary bankruptcy, and if allowed here, they must be allowed in every similar case. The question, therefore, becomes important, and with a view of obtaining a careful consideration of it, I beg to call the attention of the court to what it seems to me, must be the effect of rejecting this and similar claims. The bankrupt's first notice of proceedings in bankruptcy against him is the service of the order to show cause why he should not be adjudged a bankrupt. The moment of that service, is the moment that fixes his status with regard to his property. That moment his property, if afterward adjudged a bankrupt, becomes the property of the assignee thereafter to be appointed. He has, therefore, nothing with which he may retain counsel, call witnesses, or assist himself in his defense; yet, the 41st section of the act [14 Stat. 537], provides, that he may appear in court and defend. It further provides that, in case he is successful in his defense, he may have costs of his antagonist. Clearly this implies the right—a right in virtue of the very terms of the act itself—to retain and be aided by counsel. There is no presumption of law that counsel will serve, or witnesses attend, without compensation. Where shall the money to defray such expenses come from? It must come from the property—what should be the assets—of the bankrupt. It will be taken before or after the adjudication. It will be taken either stealthily by the bankrupt, or openly by order of the court. There can be no doubt, as to which of these two courses will most promote the

public interest and the wholesome administration of the law. It will not answer this view to say, that the law presumes all men honest, that the law will not presume that a man will commit a fraud or violate a law. It is enough to say that good legislation will not place a man under temptations to commit a wrong, which experience shows the mass of mankind have not the virtue to resist. It is true, we must submit to the law as we find it; but I think it clear, that if the bankruptcy act will bear the construction contended for, it ought to be adopted.

Upon the question then of the true construction of the act, it would seem, that congress must have intended that the costs and expenses of the bankrupt in his defense, and other proceedings should be paid out of the proceeds of his estate. A court will be reluctant to hold, that the law making power while expressly providing, that a party may appear in court and defend himself by the aid of counsel and witnesses, intended in the same act to deprive him of all the means of doing so. The fact, that no provision is made for withholding from the assets to be handed over to the assignee sufficient to pay these costs and expenses, warrants us in looking sharply to the act to find from what source it was intended, that such costs and expenses should be paid. We find in section 28, a provision for paying out of the fund "the fees, costs and expenses of suits and the several proceedings in bankruptcy under this act." This language would seem to be broad enough to cover the case before us. The words "fees, costs, and expenses" are not limited to the side of the creditors or the assignee, nor yet to the officers of the court. It is the daily practice of allowing the counsel for the petitioning creditor to be paid out of the fund for his services in the bankruptcy court. On what express words of the act are similar fees for similar services denied to the counsel for the bankrupt? Certainly none. By whatever argument these words of the act are made to embrace the compensation of counsel for the petitioning creditor the same argument will apply a fortiori to the compensation of counsel for the bankrupt.

I submitted the question herein presented to this court in 1868, in the Case of Heirschberg [Case No. 6,329]. In that case, the bankrupts' attorneys had not thought it right to take from the funds of the bankrupts their compensation in advance for filing his petition, &c., but had come in after the estate had gone into the hands of the assignee and asked to be paid from the fund. I then submitted to the court as a reason for allowing it, that "the funds from which the solicitor is paid must come from what should be the assets of the bankrupt, or from his future earnings. In pursuing the course here pursued, the solicitor submits

the amount of his compensation to the court under the eye of the creditors. In the course ordinarily pursued, he obtains his compensation from the same fund, the amount being measured by the good feelings of the bankrupt, and under some temptation to give him a larger sum than the creditors would sanction, or the court might think a just compensation. If the act will bear this construction, it would seem to tend to a better practice than that which it is believed now generally prevails." I recur to these remarks now only to say that the experience of three years has only deepened the impression then expressed—and since the Case of Comstock [Case No. 3,074], in which one of our ablest judges has taken the same view here urged, I have thought it right to submit the question again, asking for a careful reconsideration of the question. Should the court think the views here expressed, well taken, I recommend that an order be entered, allowing the claimant the sum of $250, which I think would be a fair compensation for the services which would seem to come under provisions of the act, upon the principle of construction above contended for. Respectfully submitted.

BLATCHFORD, District Judge. On evidence and a certificate bringing this case within the decision in Re Montgomery [Id. 9,726], I should follow that decision.

NOTE. The decision in the Case of Montgomery, above referred to, is as follows, Blatchford, District Judge: "If the assignee shall, in writing, approve of the payment of this bill out of the funds of this estate on the grounds set forth in the petition of Mr. Olney, and in the certificate of the register, and of the amount of the charges, and order will be made allowing its payment."

## Case No. 2,804.

### In re CLARK et al.

[The case reported under above title in 3 N. B. R. 487 (Quarto, 122), and in 1 Am. Law T. Rep. Bankr. 186, is the same as Case No. 1,-418.]

## Case No. 2,805.

### In re CLARK et al.

[4 N. B. R. 237 (Quarto, 70).][1]

District Court, S. D. New York. Nov. 7, 1870.

EXAMINATION OF BANKRUPT—RELEVANCY AND MATERIALITY OF EVIDENCE.

Where wife of a member of a bankrupt firm loaned the firm, previous to its bankruptcy, moneys arising from the sale of property which had been held in her husband's name, but the proceeds of which were promised to her in consideration of her executing a deed therefor, said moneys not appearing on the firm books to the credit of the wife, but to credit of her husband as a member of the firm, no separate account appearing in the husband's separate ac-

[1] [Reprinted by permission.]